UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMASINA FERGUSON,

                      Plaintiff,

                                                    <u>DECISION AND ORDER</u>

                                                    04-CV-6414L

                      v.

CITY OF ROCHESTER SCHOOL DISTRICT,

                      Defendant.
_____

      Plaintiff, Thomasina Ferguson, brought this action against her former employer, the City of Rochester School District ("District"), alleging that the District wrongfully refused to allow plaintiff to rescind her decision to accept a voluntary separation from employment with the District in 2002. The District has moved for summary judgment.

**BACKGROUND**

      At the time of the events in question, plaintiff had been employed by the District for a number of years as a Special Education teacher. In late 2001, plaintiff and other teachers within the District were notified of an upcoming opportunity to participate in the District's Voluntary

Employee Separation Agreement ("VESA") program. The VESA program is a cost-cutting measure that was implemented in 2001 pursuant to negotiations between the District and the Rochester Teachers Association ("RTA"), in which more senior, higher-paid teachers who agree to participate in the program are replaced with more-recently hired, lower-paid teachers. In exchange for resigning from their employment, participating teachers receive monetary compensation as well as full health and insurance benefits after they leave the District's employ.

The notice sent to plaintiff stated that participants could choose to resign at the end of the current school year, or at the end of the 2002-03 school year. The notice included an "Irrevocable VESA Election Form," which, if the recipient elected to participate, had to be submitted no later than January 25, 2002. In addition to the caption, the form also stated, *inter alia*: "This serves as my irrevocable notice of intent to resign under the provisions of the VESA Plan ..."; and "**I HEREBY TENDER MY IRREVOCABLE ELECTION TO RESIGN/RETIRE FROM MY EMPLOYMENT WITH THE ROCHESTER CITY SCHOOL DISTRICT ... .**" Dkt. #28-6 at 44.[1]

Plaintiff submitted her signed VESA form on Friday, January 25, 2002, opting to resign after the 2002-2003 school year. She elected to receive $50,000 paid over five years beginning in August 2003, plus fully-paid premiums for basic health insurance for life. *Id.*

The following Monday, however, January 28, 2002, Ferguson submitted a letter to the District stating, "Since my family situation has changed, I need to rescind the VESA Election Form that I brought in last Friday to Central Office." Dkt. #28-6 at 46. That same day, Nancy

---

[1] Plaintiff testified at her deposition that she was under the impression that "[w]ith any contract that you sign, ... you still had three days [to revoke it]," Dkt. #28-4 at 15, but she does not allege that anyone from the District ever made such a representation to her.

Palozzi, the District's Director of Employee Benefits, spoke to Ferguson and told her that Ferguson's VESA election form had already been processed and that her decision was irrevocable. Dkt. #26 ¶ 35; #28-1 ¶ 38; #32 ¶ 6.

Plaintiff spoke to various District officials about this matter over the months following the submission of her VESA form and rescission request. Plaintiff's purported reasons for wanting to rescind her VESA election included statements that her "family situation ha[d] changed," that she and her husband had been thinking about moving to Texas but had decided against it, that she was under duress at the time that she submitted the VESA election form, that she had been taking allergy medication that affected her judgment, that she had been "misinformed" in some unspecified way, and that there were "fiscal changes" bearing upon her decision. Dkt. #28-1 ¶¶ 35-51; #32 ¶ 6. In response, however, Ferguson was consistently told that her decision was irrevocable. Dkt. #28-1 ¶¶ 41-50; #32 ¶ 6.

Pursuant to her VESA election, Ferguson left her employment with the District in Summer 2003, and began receiving her $10,000 annual compensation and insurance benefits. She continues to receive those payments and benefits today. Dkt. #28-1 ¶ 52; #32 ¶ 6.

Plaintiff filed a Notice of Claim with the District on August 7, 2003, alleging that her due process and equal protection rights were violated by the District's denial of her request to revoke her VESA election. Dkt. #28-3 at 2-4. She filed the complaint in this action on August 4, 2004 in New York State Supreme Court, Monroe County, also alleging due process and equal

protection claims. The District removed the action to this Court on August 30, 2004, based on federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(3).[2]

The Court heard oral argument on defendant's motion on April 12, 2007. At that time, counsel for plaintiff stated on the record that plaintiff was voluntarily withdrawing her due process claim, and proceeding only on the equal protection claim. In addition, I orally denied defendant's motion for summary judgment insofar as it is based on defendant's argument that the action is time-barred. The sole remaining issue, therefore, is whether to grant defendant's motion for summary judgment on the merits of plaintiff's equal protection claim.

## DISCUSSION

The basis of plaintiff's equal protection claim is her allegation that "the [District] has permitted certain individuals to rescind their VESA elections, but it has not permitted this Plaintiff to rescind in a similar fashion." Complaint ¶ 9.

It is clear, however, that in fact only one individual has been allowed to rescind her VESA election. In early 2001, another teacher, Jeanne Nix, elected VESA, but then sought to revoke that election after her husband left her. At a deposition in this action, Nix testified that because of the sudden loss of her husband's financial support, she would have faced a severe

---

[2]The complaint does not cite any particular constitutional or statutory provisions as the basis for plaintiff's claims, other than to allege plaintiff has been denied "equal protection and due process of law ... ." Complaint ¶ 10. The complaint was thus properly removed to this Court, since it could have been filed in this Court as an action under 42 U.S.C. § 1983. *See City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997) ("The propriety of removal ... depends on whether the case originally could have been filed in federal court").

economic hardship had she gone ahead with her planned resignation, since the compensation provided to her pursuant to the VESA would have been "the only income [she] would have had." Dkt. #28-5 at 68.

Because of the dire financial circumstances facing Nix, the RTA, on her behalf, asked the District to allow Nix to revoke her VESA election. After some negotiations, the District agreed to do so. The written agreement between the District and the RTA stated in part that the District's decision was due to "the extreme and unforeseen financial penalty that would be suffered by Ms. Nix if she was required to take VESA," and that the District's action in this regard "shall set no precedent, custom or practice." Dkt. #28-6 at 29.

In the instant action, plaintiff does not allege that she has been discriminated against on account of her race, sex, or some other protected characteristic. Rather, her equal protection claim is based solely on the fact that Nix was permitted to rescind her VESA election, while Ferguson was not.[3] Plaintiff contends that her own reasons for seeking rescission of her VESA election were at least as compelling as Nix's, and that there was no rational basis for the District to have treated them differently.

Concerning municipal actions, the United States Supreme Court "ha[s] recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed on such a claim, however, a plaintiff must show more than a general

---

[3]Plaintiff does not now dispute that Nix is the only District employee who has been allowed to revoke a VESA election. *See* Dkt. #28-1 ¶¶ 18-26; Dkt. #32-3 ¶ 4.

similarity between her and the comparator employee, as in cases where discrimination based on membership in a protected class is claimed. *See*, *e.g.*, *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2ᵈ Cir. 2000) (stating, in the context of a Title VII race discrimination case, that "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical").[4]

As the Second Circuit has stated, "the analysis is rather different" in a class-of-one action, in which "the standard for determining whether another person's circumstances are similar to the plaintiff's must be ... whether they are '*prima facie* identical.'" *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2ᵈ Cir. 2005) (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7ᵗʰ Cir. 2002)). *See also id.* at 104 ("In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high"); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2ᵈ Cir. 2006) ("class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves"); *Mislin v. City of Tonawanda School Dist.*, No. 02-CV-273S, 2007 WL 952048, at *12 (W.D.N.Y. Mar. 29, 2007) ("The [other] person must

---

[4] I note that the Court of Appeals for the Ninth Circuit has recently ruled that "the class-of-one theory of equal protection is inapplicable to decisions made by public employers with regard to their employees." *Engquist v. Oregon Dep't of Agriculture*, 478 F.3d 985, 996 (9ᵗʰ Cir. 2007). *But see Lauth v. McCollum*, 424 F.3d 631, 634 (7ᵗʰ Cir. 2005) ("declin[ing] to rule that a public employee can *never* maintain a class-of-one case," and opting instead "simply to remind that a plaintiff who does not belong to any 'suspect' (that is, favored) class-by definition, the situation of a class-of-one plaintiff-must, to prevail, 'negative any reasonably conceivable state of facts that could provide a rational basis for the classification'") (quoting *Board of Trustees v. Garrett*, 531 U.S. 356, 367 (2001)). The Second Circuit does not yet appear to have ruled on this issue, which in any event is not raised by the District in this action.

be 'similarly situated' in all material respects to the point where they are '*prima facie* identical' to the plaintiff") (citing *Neilson*, 409 F.3d at 105).

In addition to proving the requisite degree of similarity between herself and the comparator employee, the plaintiff must also show that she was intentionally treated differently from that employee, with no rational basis for the difference in treatment. *Clubside*, 468 F.3d at 159 (citing *Olech*, 528 U.S. at 564). *See also Neilson*, 409 F.3d at 105 (plaintiff must show that she "was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose–whether personal or otherwise–is all but certain"); *Giordano v. City of New York*, 274 F.3d 740, 751 (2$^d$ Cir. 2001) (class-of-one plaintiff must "show, not only 'irrational and wholly arbitrary' acts, but also *intentional* disparate treatment") (quoting *Olech*, 528 U.S. at 565).

In short, to prevail on a class-of-one claim, a plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Clubside*, 468 F.3d at 159; *accord Neilson*, 409 F.3d at 105.

To survive summary judgment, therefore, the plaintiff must demonstrate the existence of genuine issues of fact as to those elements. *See also Giordano*, 274 F.3d at 751 (to survive summary judgment, class-of-one plaintiff must present evidence that any differential treatment was intentional, irrational, and wholly arbitrary). Applying these standards to the case at bar, I find that the District is entitled to summary judgment. Even viewing the record in the light most

favorable to plaintiff, Ferguson's and Nix's situations at the times of their rescission requests were not so similar that the District could not rationally have treated them differently.

Although whether parties are similarly situated is generally "a fact-intensive inquiry," a "court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation ... where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated." *Clubside*, 468 F.3d at 159. *See*, *e.g.*, *Mislin*, 2007 WL 952048, at *12 ("Based on the evidence of record, no reasonable jury could find that Plaintiffs have identified a 'similarly situated' individual who was treated differently than Mislin"); *Goldfarb v. Town of West Hartford*, ___ F.Supp.2d ___, 2007 WL 290283, at *7 (D.Conn. 2007) ("the court finds that no reasonable jury could determine that Goldfarb has met the 'similarly situated' prong"). This is such a case.

In her affidavit, plaintiff alleges the following reasons why she believes that her VESA rescission request should have been granted: (1) "on the day [plaintiff] submitted [the VESA] form [she] was ill and taking prescribed medication for severe allergies which detrimentally affected [her] judgment"; (2) "the VESA election [has] caused [plaintiff] similar financial hardships" to those faced by Nix, and in fact plaintiff's situation was "worse than that of Ms. Nix, in that [plaintiff] was sick and ill on the date [she] made the VESA election, ... and [plaintiff] was under a good deal of family duress concerning [her] decision to elect VESA, which [she] immediately regretted and sought to rescind the very next day"; and (3) plaintiff's "home situation also changed because on the day [she] elected to take VESA, [plaintiff's] husband [and she] believed that [they] would be moving to Houston, Texas, however, those

plans fell through, and [she] immediately sought to rescind [her] VESA election, the next day." Dkt. #32-1 ¶¶ 3, 12.

Those allegations are insufficient to defeat the District's motion for summary judgment. For one thing, the issue before me is not whether Ferguson's stated reasons for her request would have given the District a rational reason to grant it, or whether the District's denial of her request was wise. Nor is the issue whether Ferguson's situation was, on the whole, as "bad" as Nix's. In other words, it is not the Court's task to weigh the equities and decide whether Ferguson was, in some general, moral sense, as equally deserving of relief as Nix had been. The issue is whether Ferguson and Nix were sufficiently dissimilar that the District had a rational basis for treating them differently.

I conclude that, as a matter of law, such dissimilarities did exist. Despite all plaintiff's allegations about the various reasons why she sought to revoke her VESA election, in the end her situation differed from Nix's in one fundamental respect: in Nix's case, an intervening event–her husband's leaving her, and her ensuing divorce–occurred, which put Nix in unexpectedly dire straits financially.[5]

In contrast, plaintiff's multiple allegations about her difficulties notwithstanding, the record shows no comparable event that prompted Ferguson's rescission request. For whatever reason, she simply had second thoughts and regretted her decision. That she may have done so within days after submitting her election form does not render Ferguson's situation any more

---

[5]At her deposition, Nix indicated that these events were sudden and unforeseen. She testified that she "feared for [her] life and [she] had to get out" of her marriage, and that as a result she "had no place to live; ... had no income and ... didn't know what [she] was going to do." Dkt. #28-5 at 64.

similar to Nix's; in fact, it only points up the fact that there was no intervening event that led plaintiff to seek to rescind her election, other than her change of heart. Apparently, plaintiff simply felt far less sanguine about her decision on Monday, January 28, 2002 than she had when she submitted the VESA form on January 25.

The one allegation in plaintiff's papers suggesting that there may have been some unforeseen circumstances that caused plaintiff to rethink her decision is her allegation that "on the day [Ferguson] elected to take VESA, [her] husband and [she] believed that [they] would be moving to Houston, Texas, however, those plans fell through, and [Ferguson] immediately sought to rescind [her] VESA election, the next day." Plaintiff's Affidavit (Dkt. #32-1) ¶ 12. Plaintiff's deposition testimony, however, shows that in fact nothing "fell through"; as with her VESA election itself, plaintiff simply changed her mind:

> Q. Now, what had changed from Friday to Monday with respect to your family situation?
>
> A. Well, basically – actually, it had been ongoing. I had thought about just moving, and, you know, moving, you know, to Dallas or Houston where my husband's family is. We had talked about that idea. ...
>
> Q. But you then decided not to move?
>
> A. Right.
>
> Q. And that occurred over the weekend?
>
> A. Well, I had been – we had been talking about it for a while, but then I decided we better go ahead and stick it out.

Dkt. #28-4 at 29. Plaintiff went on to state that "at the time [she] signed [the VESA election form, she] was under a lot of – a lot of stress, a lot of duress," and that she "probably just should have taken a couple months off," *id.* at 29-30, but the fact remains that there was no particular

event or sudden change of circumstances that led her to rethink her decision to submit the VESA form.  In that respect, she was clearly not "*prima facie* identical" to Nix.

It bears repeating that the issue before the Court is not whether plaintiff had sound reasons for wanting to rescind her VESA election, or whether the Court would have granted her request had it been in the District's shoes.  It is also not for the Court to determine whether the District's irrevocability policy was a sound one.  The question is whether Ferguson and Nix were so similar in all material respects that the District could not rationally have treated them differently.

That question must be answered in the negative.  It was plainly not irrational for the District to conclude that Nix's situation warranted a one-time exception to the irrevocability rule concerning VESA elections, but that Ferguson's situation did not.  The District could rationally have decided that an employee faced with a sudden, unexpected loss of marital financial support *after* she elected VESA should be treated differently from an employee who simply regretted her VESA election decision, regardless of why, in hindsight, Ferguson believed that decision to have been a poor one.  Irrespective of the relative seriousness of Nix's and Ferguson's financial or other personal situations, the District could rationally have concluded that allowing Ferguson to rescind her VESA election would have opened the door to many other such "morning after" rescission requests, and would have made it much more difficult to deny such requests in the future, which was plainly contrary to the District's intent when it initiated the VESA program.  That was manifestly rational and legitimate.  *See Neilson*, 409 F.3d at 105 (class-of-one plaintiff must show that she "was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose ... is all but certain"); *Sweeney v.*

*Leone*, No. 3:05cv871, 2006 WL 2246372, at *15 (D.Conn. July 31, 2006) ("The question here is not whether Defendants' actions were 'correct,' but whether there was a rational basis and/or legitimate reason for acting as they did") (citing *Bizzarro v. Miranda*, 394 F.3d 82, 88 (2$^d$ Cir. 2005)).[6]

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #25) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 19, 2007.

---

[6]To the extent that the complaint can be read to assert an equal protection claim under New York law, that claim is dismissed as well, since it is based upon the same facts, and is analyzed under the same standards, as Ferguson's § 1983 claim. *See Hayut v. State Univ. of New York*, 352 F.3d 733, 754-55 (2$^d$ Cir. 2003) ("Because the state constitutional tort action is analyzed under the same standard as Hayut's section 1983 suit, and because Hayut relies on identical facts to support both claims, the district court correctly granted summary judgment [for the defendants] in the state constitutional tort action" as well as on the § 1983 claim).